UNITED STATES of America,
Plaintiff-Appellant,

v.

Frederick C. PRIOR, Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Frederick C. PRIOR,
Defendant-Appellant.

Nos. 74–3457, 74–4097, 75–3207.

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1977.

Rehearing and Rehearing En Banc Denied
March 22, 1977.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for the U. S.

Robert L. Floyd, James D. Little, Sherryll Martens Dunaj, Miami, Fla., for Frederick C. Prior.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS,* District Judge.

MEHRTENS, District Judge:

The government appeals from an order suppressing grand jury testimony given by defendant Frederick C. Prior (#74–3457); the defendant Prior appeals from a jury conviction on five counts of perjury under 18 U.S.C. § 1623 (#74–4097) and also appeals from the District Court's denial of a motion for new trial (#75–3207). The three appeals were consolidated.

We reverse the order suppressing Prior's grand jury testimony; affirm his conviction of perjury; and affirm the District Court's denial of the motion for a new trial.

The defendant Prior and Fred O. Dickinson were formerly law partners. Prior continued to practice law while Dickinson held public office as the Comptroller and Commissioner of Banking for the State of Florida. A grand jury was conducting an investigation into the finances, taxes and activities of Dickinson. Prior was subpoenaed to appear and produce records involving transactions between himself and Dickinson. As a result of his testimony Prior was indicted on seven counts of perjury.

The subpoena was issued April 30, 1974, directing him to appear May 3rd and to produce records relating to his transactions with Dickinson. He was advised by the United States Attorney that he was not a target of the grand jury's investigation and was desired as a "third party" witness. On May 3rd he appeared, turned over his records and was excused. He returned as a witness on May 6th, May 7th, and June 3rd, 1974.

The inquiry of Prior related to his participation in the formation of the Palm Beach Mall Bank, a state-chartered bank, for which Prior had been organizing attorney and in which he had held stock. Specifically, questions were asked concerning whether he had held any part of the stock on Dickinson's behalf; whether he had transmitted to Dickinson a portion of the profits he received when he sold the stock; and what the purpose was of a series of bills submitted by him to the Commercial Bank of Winter Park, Florida.

During his appearances Prior testified that Dickinson had never had any interest in the bank stock; that Dickinson had not assisted in making payments of interest on the loan which was obtained to pay for the stock; and that no portion of the interest payments made during the life of the loan

* Senior District Judge for the Southern District of Florida, sitting by designation.

was attributable to Dickinson. He further testified that the bills he had sent to the Commercial Bank at approximately the same times that interest became due on the loan were submitted on account of legal services that he had performed and had nothing to do with the loan.

Earlier the grand jury had heard testimony from Elmer G. Banks, president of a bank-holding company, about the Palm Beach Mall Bank. He had testified to a variety of transactions between himself, Prior and Dickinson, stating, among other things, that Prior was to hold half of his stock secretly for Dickinson and that Prior submitted statements for legal services to the Commercial Bank in amounts which would pay Dickinson's share of the interest plus Prior's income taxes thereon, which statements the bank had paid to Prior. In this manner Dickinson's interest was paid until Prior sold the stock in 1971. Midway during his May 7th testimony the Foreman read to Prior the perjury statute and it became apparent that there was at least skepticism of Prior's veracity as to his testimony. Prior, however, did not in any manner change or correct his testimony. As a result, the indictment was issued.

At a pre-trial hearing Prior moved to suppress his grand jury testimony and the documents he had produced on the ground that at neither his May nor June appearances had he been given *Miranda* warnings. The District Court granted the motion to suppress as it related to the June 3rd testimony and denied it as it related to the May 6th and 7th testimony. The District Court held that in his June 3rd appearance Prior was "in focus" as a target of the investigation and that *United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974), as it stood at the time, required an automatic suppression of the June 3rd testimony because Prior was a "putative defendant." As a result the court later granted a motion to sever Counts I and V based exclusively on June 3rd testimony, and to strike from Counts II, III and IV all portions of testimony given on June 3rd. The United States appealed

from the order suppressing the June 3rd testimony.

During the trial, on Counts II, III, IV, V and VI, the government subpoenaed Dickinson, the State Comptroller, to identify and testify as custodian of that office's records. Dickinson, prior to trial, asserted that if called to testify on behalf of either party, he would assert his Fifth Amendment privilege in response to any questions except those relating to production and identification of the Comptroller's records. Pursuant to the subpoena, he appeared, produced and identified the records, answering all questions put to him concerning them. He was then excused without asserting his Fifth Amendment privilege.

At the conclusion of the trial the jury returned verdicts of guilty on each of the five counts submitted to it. Prior has appealed from the conviction and from the denial of his motion for a new trial.

### Prior's Motion to Suppress Grand Jury Testimony

■ The District Court in ruling upon Prior's motion to suppress his grand jury testimony found that by the June 3rd session the grand jury had focused on Prior, believing that he was committing perjury and held that under *Mandujano, supra,* the June 3rd testimony should have been preceded by *Miranda* warnings, but that the earlier testimony would be admissible.

Thereafter, the United States Supreme Court in *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), decided while this appeal was pending held that *Miranda* warnings need not be given to a grand jury witness called to testify about criminal activities in which he may have been personally involved, and that therefore the failure to give such warnings is not a basis of suppression in a subsequent prosecution for perjury, citing *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), in which the court had held that:

"[T]he shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free

from the risk of confrontation with prior inconsistent utterances."

The court continued:

"The fact that here the grand jury interrogation had focused on some of respondent's specific activities does not require that these important principles be jettisoned; nothing remotely akin to 'entrapment' or abuse of process is suggested by what occurred here. Cf. *Brown v. United States,* 245 F.2d 549 (CA8 1957). Assuming, *arguendo,* that respondent was indeed a 'putative defendant,' that fact would have no bearing on the validity of a conviction for testifying falsely  .   . Respondent was free at every stage to interpose his constitutional privilege against self-incrimination, but perjury was not a permissible option.   As the Tenth Circuit has held, the law provides 'other methods for challenging the government's right to ask questions.' *United States v. Pommerening,* 500 F.2d 92, 100 (CA10 1974)."   *Mandujano, supra,* at 583, 584, 96 S.Ct. at 1780.

In light of *Mandujano,* we reverse the order suppressing Prior's grand jury testimony given on June 3rd.  *See also, United States v. Yeager,* 537 F.2d 835 (5th Cir. 1976); *United States v. Wendling,* 535 F.2d 323 (5th Cir. 1976).

Prior's Appeal from Jury Conviction

Prior first asserts that the District Court improperly struck from Counts II, III and IV of the indictment the quotation from Prior's June 3rd testimony and that by so doing the indictment was improperly amended.

■ It is, of course, basic law that an indictment may not be amended.   Many cases have held, however, that it is not an amendment of an indictment to withdraw a portion of it from the jury's consideration, usually because of the government's inability to prove that part, and to submit the case to the jury on what remains, provided the indictment still charges an offense and the same offense originally contemplated by the indictment as returned.   *See Salinger v. United States,* 272 U.S. 542, 47 S.Ct.

173, 71 L.Ed. 398 (1926);   *Overstreet v. United States,* 321 F.2d 459 (5th Cir. 1963); *Thomas v. United States,* 398 F.2d 531 (5th Cir. 1967); and *United States v. Auerbach,* 420 F.2d 921 (5th Cir. 1969).

■ After granting the motion suppressing the testimony given on June 3rd, the District Court correctly (indeed it had no alternative) severed Counts I and V, charging the commission of perjury on June 3rd. As to Counts II, III and IV which charged the commission of perjury on both May 7th and June 3rd, the striking of those portions quoting from the June 3rd testimony, was correct because that action merely withdrew from the jury the very evidence that the court had already ordered suppressed.

■ Prior next claims that the government failed to prove that he was duly administered an oath by the ·Foreman at the commencement of his testimony.   He relies upon the certificate of the court reporter, a preprinted form describing the proceedings as a deposition.   He argues that this certificate conclusively establishes that the court reporter rather than the Foreman administered the oath to him and that notary publics not being authorized to administer oaths to grand jury witnesses, the government's case failed at its inception.

While the certificate might be sufficient, if not contradicted, to overcome the presumption of regularity that attends on grand jury proceedings, it was not conclusive on the trial jury.   At the trial the Foreman testified that he personally administered the oath to all witnesses who appeared before the grand jury on any date that he was in attendance, and that the Deputy ·Foreman had the responsibility of administering the oath on the few times he was absent.   He testified that it was his recollection that he did administer the oath to Prior;   that so far as he knew, no court reporter had ever administered an oath to a grand jury witness;   that upon reviewing his office calendar for May 3, 1974, and reviewing the grand jury roll call record made personally by him, he was able to state unequivocally that he was present at the grand jury session of May 3rd.   In

**1258**

addition, the May 3rd transcript identifies the Foreman as being present on that date and shows that Prior spoke to him and was introduced to him by his title as "Foreman."

It was for the jury to weigh the relative credibility of the Foreman and the form. There was ample evidence from which they could and did conclude that the oath had been properly administered by the Foreman, and that the court reporter had simply used the wrong certificate form when preparing the transcript.

Prior next asserts that it was improper for the government to call Dickinson because by so doing the jury was led to infer that he was guilty or else "his associate" would have exculpated him.

■ Dickinson had a sufficiently special relationship to Prior by reason of the charge by the government that Prior, Dickinson and Banks were co-conspirators, that he would not be classed as an "ordinary" witness. Consequently, it would have constituted error for the jury to hear him assert a Fifth Amendment privilege. *San Fratello v. United States,* 340 F.2d 560 (5th Cir. 1965), *rehearing denied,* 343 F.2d 711 (5th Cir. 1965). That relationship, however, is irrelevant where he did not, to the knowledge of the jury, assert his privilege, but simply answered the questions asked. The point of *San Fratello* is not that there is something amiss in the jury's seeing and hearing a "non-ordinary" witness; it is that when such a witness successfully invokes his Fifth Amendment privilege, the jury is likely to impute to the defendant the inference of criminality. *See, Lawrence v. Wainwright,* 445 F.2d 281 (5th Cir. 1971); *United States v. Wilcox,* 450 F.2d 1131 (5th Cir. 1971). In the case *sub judice,* no Fifth Amendment privilege was, or needed to be, asserted.

While hindsight shows that the government could have proved its case without calling Dickinson, any improper inferences raised by doing so were not of reversible consequence. The trial court found nothing in the witness' appearance that prejudiced the defendant, and we concur in that finding.

### Prior's Appeal from Denial of Motion for a New Trial

While the above appeals were being taken, Prior moved for a new trial saying he had discovered within his records a letter which had been misfiled and had not been located before then. Prior claims that the trial court erred in denying his motion for a new trial on the ground of newly-discovered evidence, alleging the letter contradicted the government's primary witness, Banks, and that the government failed to produce the letter under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The letter from Banks to R. F. Raidel stated, in part:

"Pursuant to our conversation of a few days ago, this is to advise you that Com-Banks Corporation is actively pursuing the application of a state-chartered bank within the De Bartolo shopping center complex on the Major Realty property. In this connection, we have engaged Mr. Frederick Prior of West Palm Beach to represent our interest."

During trial, Banks had been asked if Prior had ever performed any legal services for the Commercial Bank at Winter Park which would entitle him to bill that bank. He had answered, "Not to my knowledge, he never performed services for the Commercial Bank at Winter Park."

The defendant asserts the letter could have been developed affirmatively to create reasonable doubt in the minds of the jurors if it had been produced by the government, and that, therefore, a new trial should be granted.

This court has, in several cases, stated the elements of and the standards for consideration of a motion for new trial on the ground of newly-discovered evidence as follows: the evidence must be discovered following trial; there must have been diligence on the part of the movant to discover the new evidence; the evidence is not merely cumulative or impeaching; the evidence is material; and a new trial would probably produce a new result. *Nagell v. United*

*States,* 354 F.2d 441 (5th Cir. 1966); *United States v. Rachal,* 473 F.2d 1338 (5th Cir. 1973). *See also, Ledet v. United States,* 297 F.2d 737 (5th Cir. 1962); *United States v. Crane,* 445 F.2d 509 (5th Cir. 1971); *Hudson v. United States,* 387 F.2d 331 (5th Cir. 1967).

During cross-examination Banks had testified to a proposed venture in the middle or latter part of 1968 to acquire for his holding company, ComBanks, a site for an additional bank in a shopping center being constructed in Orlando by the De Bartolo interests on property owned by Major Realty. He stated that he had sent a letter to Prior in mid 1968 about the venture. Banks further testified that his copy was still in existence in his office files. No request was made of him to produce his copy and the defense did not pursue the topic. After specific testimony about the existence and present availability of the letter and Prior's trial abandonment of the subject, his later post-trial production of the letter from his own files does not qualify it as "newly discovered evidence."

[7] On its face, the letter shows two crucial facts that independently negate any claim that the government was obliged under *Brady* to produce it for Prior. It showed that a copy had been sent to Prior, and it further showed that it had no bearing on the bills Prior submitted to the Commercial Bank of Winter Park between December 1969 and January 1971.

As to the first point, numerous cases have ruled that the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself. *Williams v. United States,* 503 F.2d 995 (2d Cir. 1974); *United States v. Purin,* 486 F.2d 1363 (2d Cir. 1973); *Wallace v. Hocker,* 441 F.2d 219 (9th Cir. 1971); *United States v. Brawer,* 367 F.Supp. 156 (S.D.N.Y.1973). The notation "bcc: Mr. Frederick Prior" was on the letter.

Secondly, the letter is, at most, slightly impeaching of Banks' testimony on a collateral matter introduced by Prior on cross-examination. The dates of the bills submitted to the Commercial Bank of Winter Park by Prior were from December 1969 to January 1971. The letter in question was dated May 3, 1968. The letter referred to a proposal to acquire a bank site that never materialized, and consequently, whatever connection Prior was to have with it never materialized. By the time he sent the first of the five bills to the Commercial Bank, the project was more than a year defunct. Had Prior performed some legal service in connection with it before it folded, he would hardly have waited 19 months before submitting the bills, and he would not have divided his charges long past due into five separate bills rendered over a 14-month interval.

As this court said in *Ross v. State of Texas,* 474 F.2d 1150 (5th Cir. 1973):

"In our estimation, the likelihood of changing a jury's decision as a result of newly discovered evidence must rise considerably above the level of speculation. Otherwise, finality would be a vanishing element from all judgments of conviction in criminal cases."

After carefully considering all of Prior's contentions, we find them to be without merit. His perjury was amply proved in a properly and fairly conducted trial. His perjury conviction and the denial of his motion for a new trial are affirmed.