Pressie **HUGHES**, Jr.,
Petitioner–Appellant,

v.

Joe S. **HOPPER** et al.,
Respondents–Appellees.

No. 79–2566.

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1980.

Paul L. Hanes, Atlanta, Ga. (Court–appointed), for petitioner–appellant.

John W. Dunsmore, Jr., Tom Watry, Asst. Attys. Gen., Atlanta, Ga., for respondents–appellees.

Before VANCE, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Pressie Hughes appeals the district court's denial of federal habeas corpus relief and its holding that the State did not suppress *Brady v. Maryland*[1] material. The petitioner sought federal relief to invalidate his armed robbery conviction and three concurrent life sentences after exhausting his available state remedies pursuant to 28 U.S.C. § 2254(b). We affirm.

FACTS

On November 7, 1969, four armed men entered the Atlanta, Georgia, home of Alderman Q. V. Williamson. Two of the men tied up Mrs. Williamson, her brother and son and then searched the house for valuables; the other two men abducted Mr. Williamson in order to gain access to his store. Mr. Williamson managed to alert the police and eventually three men were taken into custody. After Williamson identified Hughes' picture in a mug book, Hughes was arrested in Jacksonville, Florida, four days later.

The four defendants were tried separately; during petitioner's trial the three robbery victims testified that Hughes was one of the two men who remained at the house. The jury found Hughes guilty on the three

counts of armed robbery and gave him three concurrent life sentences.[2]

Hughes' direct appeal of his convictions to the Georgia Supreme Court was denied in *Hughes v. State*, 228 Ga. 593, 187 S.E.2d 135 (1972). He then petitioned the Superior Court of Fulton County for a writ of habeas corpus on grounds very similar to ones raised in the instant appeal. After a hearing in which the various attorneys and prosecutors testified, the state court denied the writ in *Hughes v. State of Georgia*, Habeas Corpus, No. 1663 (Nov. 23, 1976). Petitioner then sought habeas corpus relief in the United States District Court for the Northern District of Georgia. The district court adopted the United States Magistrate's recommendation that, since Hughes failed to show that the prosecution suppressed exculpatory *Brady* materials or that the government witnesses perjured themselves, his habeas corpus petition should be dismissed. *Hughes v. Hopper*, Civil Action No. C–77–933–A (Mar. 21, 1979). The court also denied Hughes' motion to reconsider but granted him a certificate of probable cause for review and leave to prosecute his appeal *in forma pauperis*.

The alleged *Brady* material at issue is an investigative report prepared by H. G. Bailey for the District Attorney's Office.[3] On appeal, petitioner contends that the report casts doubt on the credibility of the three

---

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196.

2. When a capital offense is involved Georgia juries determine both guilt and punishment. Ga.Code Ann. 26- 3102 (1977 Rev.).

3. The one page report, dated November 25, 1969, was marked as State's Exhibit 2 in Hughes' trial:

This witness [Patricia Ann Copeland] indicated that she, Betty Smith and Sarah Smith were driving west on Hunter St. when they heard several shots and that they saw two men being chased by a uniformed officer, this witness indicated one of the men was carry-

ing an object which to her appeared to be a brief case, the person carrying the brief case according to this witness appeared to be Pressie Hughes, this witness was *not positive* of her identification of Hughes but stated that the photograph of Hughes appeared to be the same person she saw carrying the brief case.

This witness made a positive identification of *Oliver Thompson as the person who she saw with Hughes.*

This witness also stated that the two persons she saw running west on Hunter St. *went into a driveway at Sellers Bro.* 889 Hunter St. and that she next saw the same two persons walking south on Ashby St. approaching Hunter St. at this time this witness states that she, Betty Smith and Sarah Smith were at the intersection of Hunter St. and Ashby [emphasis added].

state witnesses' identification of Hughes as being one of the men who remained behind at the Williamson house, since it places him instead at the Williamson store. He argues that since he obviously could not be in two places at the same time the disclosure of the report would have established two positive and completely contradictory identifications as to location, thus creating a reasonable doubt in the jury's mind as to his involvement in the crime. Further, Hughes alleges that, since Mr. Jenrette, the trial prosecutor, failed to disclose the inconsistent identifications, Jenrette knowingly used perjured testimony on a material issue.

In response, the State asserts that *Brady* was not violated because Hughes' trial counsel, Mr. Hester, received the substance of the report at least five days prior to trial during a pretrial hearing. It is undisputed that Mr. Ridley, the investigative prosecutor,[4] made the following response to a question posed by Mr. Hester:

A: Sir, the two young ladies told me that they could identify [Hughes] as he was breaking out of the window, leaving Mr. Williamson's place of business; that he ran by them twice in the street, and they could identify him from having seen him in the street.

Appellant's Record Excerpts, pp. 16–17.

During the pretrial hearing, Hester made a general discovery request for all exculpatory information that was denied.[5] There is also no dispute that in response to Hester's specific discovery request for the names and statements of the two witnesses, Jenrette stated

Your Honor, I can state in my place, for the purposes of this motion, no one can identify this man as having jumped through a plate glass window.

Trial Transcript at 175.

Hester was given the names and addresses of the two witnesses during trial but the remainder of his motion was denied.

We now consider the merits of these contentions.

## DISCUSSION

■ In order to state a successful *Brady* claim, the petitioner must show 1) the prosecution suppressed evidence 2) that was favorable to him and 3) that was material. *United States v. Anderson*, 574 F.2d 1347, 1353 (5th Cir.1978). It is clear from the record that Hughes' attorney Hester never received the actual report but that he received the substance of the report during the pretrial hearing. However, the evidence in a nondisclosed report must be material within the meaning of *Brady* and its progeny to justify a reversal. *Id.* at 1353. This Circuit has recognized four *Brady* situations with varying materiality standards. *See United States v. Anderson, supra,* 574 F.2d at 1353–55.[6]

---

**4.** This case was complicated by the number of prosecutors and attorneys involved (Hughes had four different ones before Hester was appointed).

**5.** The state court ordered that Hester receive the names of all of the witnesses listed on the indictment pursuant to Ga. Code Ann. 27–1403 (1978 Rev.). The names and addresses of the two potential eyewitnesses were listed, Record, at 148.

**6.** The four *Brady* situations are:
  1) the prosecutor has not disclosed information despite a specific defense request–the materiality test is that the suppressed evidence "might have affected the outcome" (*Brady v. Maryland, supra,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215);
  2) the prosecutor has not disclosed information despite a general defense request for all exculpatory information or without any

defense request at all the materiality test is that the nondisclosed information "creates a reasonable doubt that did not otherwise exist" (*United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342);
  3) the prosecutor knows or should know that the conviction is based on false evidence–the materiality test is whether there is "any reasonable likelihood" that the suppressed information affected the outcome (*Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972);
  4) the prosecutor fails to disclose purely impeaching evidence not concerning a substantive issue, in the absence of a specific defense request -the materiality test is that the suppressed information "probably would have resulted in an acquittal" (*United States v. Anderson, supra,* 574 F.2d at 1354).

While it appears that the facts of this case do not fit neatly into any of the four categories described in *Anderson,* we do not find it necessary to create a fifth category since petitioner has failed to prove that the State violated *Brady.* First, the information in the report was not suppressed within the meaning of *Brady* since defense counsel Hester had the substance of that report before trial. *United States v. Prior,* 546 F.2d 1254, 1259 (5th Cir.1977). Hester admitted that the names and addresses of the two possible witnesses were listed on his copy of the indictment and that prosecutor Jenrette also supplied him with their names and addresses at trial. As petitioner conceded on brief, if defense counsel knew about exculpatory or favorable information and made no effort to obtain it, there is no violation of *Brady.* *United States v. Campagnuolo,* 592 F.2d 852, 861 (5th Cir.1979); *United States v. Cravero,* 545 F.2d 406, 420 (5th Cir.1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549.

There are at least two situations in which defense counsel's knowledge of the substance has been effectively nullified by the prosecution's actions. One occurs when a prosecutor makes assurances to a court that are contrary to the information defense counsel has. *See, e.g., United States v. Gaston,* 608 F.2d 607 (5th Cir.1979). Another situation is when the prosecution misleads the defense into believing the evidence will not be favorable to the defendant. *See Freeman v. State of Georgia,* 599 F.2d 65, 72 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641. We find that the failure to pursue the two witnesses was caused by Hester's lack of diligence rather than by prosecutor Jenrette's assurances.[7] Moreover, it is clear that Hester was aware of the impeachment value of the report since he used it during Q. V. Williamson's cross–examination.[8]

Furthermore, the information in the report was not favorable to Hughes since it placed him in a phase of the crime (albeit a different phase than the one about which the robbery victims testified), not in Jacksonville, Florida, where he claimed to be on the day of the crime. *United States v. Nix,* 601 F.2d 214, 215 (5th Cir.1979), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 196; *United States v. Sink,* 586 F.2d 1041, 1052 (5th Cir.1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876. At best the report is neutral since it does not contain a *positive* identification of Hughes, although it arguably has limited impeachment value as it places him at a point different than the testimony. *United States v. Rhodes,* 569 F.2d 384, 388 (5th Cir.1978), *cert. denied,* 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143; *Garrison v. Maggio,* 540 F.2d 1271, 1274 (5th Cir.1976), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258.

The ultimate test that any *Brady* claim must meet is whether the prosecutor's omission is of sufficient significance to result in a denial of petitioner's right to a fair trial. *United States v. Agurs, supra,* 427 U.S. at 113, 96 S.Ct. at 2402. As this Court noted, impeachment evidence can rarely meet this test. *Garrison v. Maggio, supra,* 540 F.2d at 1274. We cannot conclude that Hughes did not receive a fair trial as a result of the nondisclosure of this report. The record reveals that the jury heard the defense raise the issue of the two witnesses

---

7. Actually Jenrette more accurately characterized the report than Ridley did since the report did not contain positive identification nor did it state that Hughes was seen breaking out of a window.

8. The following colloquy occurred between Hester and Q. V. Williamson:

    Q. You know anything about two young ladies supposed to have been near the scene where somebody jumped out the window and ran by? Do you know anything about that?

    A. Yes, the detective told me they had two young ladies who saw them.

    Q. And didn't those two young ladies say that it was Pressie Hughes?

    A. I don't know who they said it was.

    Q. You don't know that Pressie Hughes wasn't down at your place of business?

    A. No, he wasn't.

Trial Transcript at 134–5.

during the cross–examination of Q. V. Williamson and the cross–examination of Hughes. *Hudson v. Blackburn,* 601 F.2d 785, 789 (5th Cir. 1979), *cert. denied,* 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772. More significantly, each of the robbery victims made unequivocal, in–court identifications of Hughes. *See, e.g., United States v. Judon,* 567 F.2d 1289, 1294 (5th Cir.1978); *Garrison v. Maggio, supra,* 540 F.2d at 1274. We find that the report was not material under *any* of the materiality standards as there has been no showing that the disclosure would probably have resulted in an acquittal or would have affected the outcome of the trial in any way. *United States v. Agurs, supra,* 427 U.S. at 113, 96 S.Ct. at 2402.

It should be noted that a few recent Fifth Circuit cases have held that if an inconsistency or conflict between trial testimony and nondisclosed information has a direct bearing on the credibility of a key prosecution witness, such information is material under *Brady* even if it has impeachment value only. *Martinez v. Wainwright,* 621 F.2d 184 at 188 (5th Cir. 1980); *Monroe v. Blackburn,* 607 F.2d 148, 152 (5th Cir.1979); *Hudson v. Blackburn, supra,* 601 F.2d at 789. But even assuming *arguendo* that the investigative report was material, its nondisclosure does not mandate a reversal here since petitioner's trial counsel had the substance of the report and used it during trial. *Hill v. Wainwright,* 617 F.2d 375 at 379–80; *Hudson v. Blackburn, supra,* 601 F.2d at 789.

Petitioner also contends that, because the prosecutor was aware of the alleged inconsistency in identifications, he utilized perjured testimony to obtain his conviction. This contention is wholly without merit. During Hughes' cross–examination, Jenrette gave him an ample opportunity to tell the jury about the two other witnesses. The prosecution had no duty to disclose the inability of eyewitnesses to positively identify the defendant. *United States v. Rhodes, supra,* 569 F.2d at 388. The responsibility to call the two witnesses rested with the defense.

We hold that the State did not violate *Brady* since petitioner failed to show the prosecution's use of perjured testimony or its suppression of favorable information that was material to the petitioner's guilt or innocence. Accordingly, the district court judgment is

AFFIRMED.

THOMAS A. CLARK, Circuit Judge, specially concurring:

I concur in the result but would limit the holding to the issue that there was no suppression because counsel for the defendant had the information available as the result of the pre–trial hearing and the witness list. I do not agree that the information was neutral and thus not material, and it is on this point that I depart from the majority opinion.