Arthur J. MONROE,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary,
Respondent-Appellee.

No. 78–3191.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1979.

Rehearing and Rehearing En Banc Denied Jan. 16, 1980.

Robert Glass, New Orleans, La. (Court-appointed), for petitioner-appellant.

David J. Cortes, Brian G. Meissner, New Orleans, La., for respondent-appellee.

Before COLEMAN, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

On April 26, 1974, Arthur Monroe was found guilty of armed robbery by a Louisiana jury and sentenced to 20 years imprisonment in the Louisiana State Penitentiary at Angola, Louisiana. After exhausting his state remedies,[1] Monroe filed a petition for habeas corpus in the District Court for the Eastern District of Louisiana. In this appeal from the district court's denial of the petition, the sole issue presented is whether Monroe was denied due process because of the prosecutor's failure to produce at trial a statement given to the police by the victim of the robbery.

On the afternoon of March 14, 1974, Doty Marisco, a laundry route salesman, was robbed at gunpoint of his wallet and about $8.00 in change. Marisco immediately reported the robbery to the New Orleans police. Although he was not able to describe the robber's face, Marisco was able to tell the police that the robber was a black male, about 20 years old, approximately 6 feet tall, and wearing a red, white and blue plaid shirt. A few minutes later the police approached Monroe who was talking with another man some three blocks away from the scene of the robbery. Upon seeing the police, Monroe fled, but was apprehended within a short time. He had a pistol and $1.90 in change; neither the wallet nor the money taken from Marisco were ever recovered. Monroe was then taken back to the scene of the robbery. Marisco was not able positively to identify Monroe as the robber but did tell the police that Monroe's general appearance, shirt and gun were similar to

1. The conviction and sentence were affirmed by the Louisiana Supreme Court in *State v. Monroe*, 329 So.2d 193 (La.1976). Petitioner's state habeas petition was denied by the same court, two justices dissenting, in *State v. Monroe*, 342 So.2d 1108 (La.1977).

the robber's. Monroe's fingerprint was later lifted from the inside door handle on the driver's side of Marisco's laundry truck.

Approximately two hours after the robbery, Marisco gave the following statement to the police:

At about 3:15 p. m., this date, I had stopped my truck in the 2300 block of South Galvez Street to make a laundry pick up at the Santa Monica School. As I started to get out of my truck, I had one foot on the ground, and I was looking down where I was stepping, when I heard a man say, "I want your money."

Brief for Appellant at 6–7.

At trial, Marisco was called as the prosecution's first witness. When asked to describe the robbery he stated:

I was in a paneled truck with sliding doors. I was going to make a pick up at 2300 Galvez and before I got out of my truck, I was writing my ticket out, I heard a noise on my left hand door. He had the latch door.

Record Transcript of State Trial at 2–3.

On cross-examination, defense counsel asked Marisco if he had ever given a statement to the police, to which Marisco answered that he had. Counsel then requested the statement, the prosecutor objected to producing it, and the court sustained the objection.

Petitioner emphasizes that Marisco's pretrial statement to the police did not mention "a noise" at the door. During his testimony at trial, however, Marisco stated that he did hear a noise just prior to his confrontation with the robber. This testimony, petitioner argues, was relied on by the prosecutor to establish that petitioner's fingerprint was placed on the door of the laundry truck at the time of the robbery and not at some other time.[2] Petitioner argues that Marisco's statement to the police, had it been disclosed, could have been used to cast doubt upon the reliability of the damaging testimony elicited by the prosecutor at trial. Thus, petitioner contends that the prosecutor's failure to turn over the statement denied him due process and now seeks a reversal of the District Court's denial of habeas relief. For the reasons stated below, we reverse and remand.

■ In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court set forth the general rule by which we evaluate the due process implications of a prosecutor's refusal to provide evidence that is favorable to the defense: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. Subsequent decisions have refined and clarified the *Brady* holding, and it is now clear that in order to establish a *Brady* violation the defendant must prove three things: "(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; (3) The materiality of the suppressed evidence." *United States v. Sink,* 586 F.2d 1041, 1051 (5th Cir. 1978); *United States v. Anderson,* 574 F.2d 1347, 1353 (5th Cir. 1978).

Since we have little difficulty in concluding that petitioner has satisfied the first two parts of the test, we turn to the third and most important element.

The definition of materiality, for purposes of the *Brady* doctrine, varies with the nature of the suppressed evidence and the manner in which the request, if any, is made. The Supreme Court has identified three types of cases to which *Brady* applies: (1) The prosecutor has not disclosed information despite a specific defense request; (2) the prosecutor has not disclosed information despite a general defense request for all exculpatory information or without any defense request at all; (3) the prosecutor knows or should

---

**2.** At trial, Monroe testified that he did not touch the truck when he was brought to the scene by the police. Record, transcript of state trial, at 65, 66.

know that the conviction is based on false evidence.

*United States v. Anderson,* 574 F.2d 1347, 1353 (5th Cir. 1978).[3]

■■ This case falls squarely into the first category. Although the prosecutor argues otherwise, we cannot see how a defense request could be more specific than the one made in this case.[4] Accordingly, the appropriate test of materiality is whether "the suppressed evidence might have affected the outcome of the trial."[5] *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). Stated another way, the suppression of favorable evidence by the prosecutor, in the face of a specific request, cannot be excused unless " 'there appears no reasonable likelihood that [the evidence] would have affected the judgment of the jury.' " *White v. Maggio,* 556 F.2d 1352, 1357 (5th Cir. 1977) (quoting *Shuler v. Wainwright,* 491 F.2d 1213 (5th Cir. 1974)).[6]

---

3. This court recently has held *Brady* applicable where "the prosecution fails to disclose purely impeaching evidence not concerning a substantive issue, in the absence of a specific defense request." *United States v. Anderson,* 574 F.2d 1347, 1353 (5th Cir. 1978); *see Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977).

4. The following exchange took place during defense counsel's cross-examination of Marisco:

   Q. Did you make a statement to the police as to what happened that day?
   A. I told them exactly what happened.
   Q. Did they write down everything that you told them?
   A. I don't know if they wrote down everything.
   Q. Did you sign a statement?
   A. Yes.
   Q. Did you read the statement?
   A. Yes, I read it.
   Q. You are testifying today basically from what you remember to have happened on that particular day, as well as what you remember reading in that statement, is that correct?

   BY THE COURT:
   What is the basis of your testimony? What you remember or what you read?

   BY THE WITNESS:
   What I remember.

   EXAMINATION BY MR. McKEE:
   Q. Did you refresh your memory prior to coming in court?
   A. I have been thinking about the case. I am telling the truth.
   Q. I am not trying to confuse you in any way, I'm merely asking a question. Did you read it prior to coming to court?
   A. On the day it happened.

   BY MR. McKEE:
   I move to have the statement at this time.

   BY MR. CAPITELLI:
   I object.

   BY THE COURT:
   Objection sustained.

   BY MR. McKEE:
   The defense would like to reserve a bill of exception making a part thereof the question propounded to the witness, the question made by the defense to read the statement and present the statement in court for the purpose of reviewing said statement and make it a part of the entire record.
   Record, transcript of state trial, at 7–8.

5. The lowest materiality standard is applied in the third class of cases, where the prosecutor knowingly uses false evidence or perjured testimony. In such cases, reversal is required if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). This is very similar to the standard applied where a specific request *is* made. Where only a general request or no request is made, in order to show that he was denied a fair trial, the defendant must show that "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at 2402; *United States v. Herberman,* 583 F.2d 222, 228 (5th Cir. 1978). The highest standard is applied where the prosecutor, in the absence of a specific defense request, fails to disclose "purely impeaching evidence not concerning a substantive issue at trial." *United States v. Anderson,* 574 F.2d 1347, 1354 (5th Cir. 1978). In such cases, the defendant must "demonstrate that the undisclosed evidence probably would have resulted in an acquittal." *Id.; see Galtieri v. Wainwright,* 582 F.2d 348, 363 n. 29 (5th Cir. 1978) (en banc).

6. We do not think that our En Banc decision in *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978) (en banc), requires us to apply a higher standard of materiality in this case. In *Galtieri,* defense counsel made a pre-trial general request for *Brady* material. At that time the prosecutor failed to turn over grand jury testimony of a court witness who later testified at the defendant's trial. At trial, defense counsel made a specific request for a transcript of the testimony. The trial judge refused the request, with the proviso that defense counsel could inquire, on cross-examination, into the substance of the grand jury testimony. The En

■ Although the question in this case is not one of sufficiency of the evidence, in deciding whether the suppressed evidence "might have affected the verdict," it is necessary for us to consider Marisco's pre-trial statement in light of the other evidence of guilt offered by the prosecutor. The transcript from the trial shows that Marisco was called as the prosecution's first witness and provided the most damaging testimony against Monroe. On two separate occasions the prosecutor questioned Marisco about the noise at the door, presumably in an attempt to show that Monroe's fingerprint got on the door handle during the course of the robbery. Marisco then identified Monroe as the one who was brought back to the scene of the robbery by the police, but, on cross-examination, he testified that he did not get a good look at the robber and was not able positively to identify Monroe as the robber when he was brought back to the scene. Record, transcript of state trial, at 8, 10. Viewing the evidence in a light most favorable to the prosecution, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the balance of the case consisted of establishing that Monroe's shirt and gun were similar to the robber's and that Monroe fled when confronted by the police a few minutes after the robbery. Given the absence of other evidence connecting Monroe with the robbery and the victim's inability to identify Monroe as the robber, the fingerprint evidence became a crucial part of the prosecutor's case. Although the victim's statement to the police did not directly contradict his trial testimony, the absence of any reference in that statement to a "noise at the door" could have been useful to the defense in attacking his in-court testimony on this crucial issue. This distinguishes the statement from that class of evidence that may properly be labelled "impeachment evidence not concerning a substantive issue." *United States v. Anderson*, 574 F.2d 1347, 1354 (5th Cir. 1978). Such evidence may be useful for the purpose of showing that the witness is, generally, not likely to be credible.[7] Marisco's statement, on the other hand, is impeachment evidence of the sort that goes directly to a substantive issue and could be used in urging that the in-court testimony has been "improved" by the erroneous addition of what the prosecution needed to support its theory. Under these circumstances, there is at least a reasonable likelihood that the suppressed evidence could have affected the verdict. Accordingly, we hold that the prosecutor's failure to turn over the statement denied petitioner a fair trial within the meaning of *Brady* and the due process clause of the fourteenth amendment. We reverse the decision of the district court and remand the case with instructions that the district court order the petitioner released

Banc Court applied the reasonable doubt standard of materiality which we previously stated, note 5, *supra*, is applicable where a general request or no request is made. *Id.* at 362. It appears that the Court used this higher standard because of certain factual differences between the typical *Brady* case and the one before it:

In summary, there are a number of distinctions between this case and the *Brady* line of cases. Here, the omitted evidence was "discovered" during, not after, the trial. The trial judge, not the prosecutor, made the decision that the trial should continue without the transcript. *The relevant information contained in the omitted evidence was put forth before the jury*. The testimony at the third grand jury proceedings, as recounted by Braverman, was not clearly exculpatory.

*Id.* at 364 (emphasis added).

We think that the critical factor in *Galtieri*, justifying the application of a more rigorous standard of materiality, was that the evidence was made available to the jury, albeit not in the form requested by counsel. Since the question of materiality focuses on the impact that the evidence might have had if made available to defense counsel, we think that *Galtieri* does not require us to use the higher reasonable doubt standard where, as here, the trial court did not qualify his ruling so as to allow cross-examination on the substance of the witnesses' prior statement. Even if we were to apply the higher standard used in *Galtieri*, on these facts we would still hold that petitioner was denied a fair trial.

7. "[S]uch impeachment could concern the witness' interest, motives, prejudices, hostilities, means for obtaining knowledge, power of memory, way of life, associations, and other pertinent circumstances affecting credibility." *United States v. Anderson*, 574 F.2d 1347, 1354 (5th Cir. 1978).

from custody if the state does not retry him within a reasonable time.

REVERSED and REMANDED.

COLEMAN, Circuit Judge, dissenting:

I respectfully dissent.

The presence of the fingerprint on the inside of the door handle, when the defendant disclaimed touching the truck at any time, far outweighs any possible prejudicial effect stemming from whether the prosecuting witness did or did not hear a noise before being accosted. Witnesses may be mistaken, they may deliberately lie, about their recollections of such fleeting matters as hearing a noise or overhearing a few words of a conversation. Physical facts do not lie. In this case the fingerprint was there and there is not the slightest suggestion that it might have gotten there at some other time or place and in an innocent fashion.

I would not invalidate this state conviction on constitutional grounds. Of course, we have no jurisdiction to do it on any other basis.