George Braddock OGLE, II,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–3812.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 6, 1981.

Frank S. Wright, William A. Bratton, III, Dallas, Tex., for petitioner-appellant.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before COLEMAN, RUBIN and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Petitioner, George Braddock Ogle, II, appeals the denial of habeas corpus relief under 28 U.S.C. § 2254(b) (1976) by the United States District Court for the Northern District of Texas following his conviction in Texas state court of kidnapping.

Ogle was indicted for allegedly kidnapping Phillip Ross Terry, a minor, from Terry's elementary school in Richardson, Texas on February 20, 1973, and holding him for ransom. Phillip Terry had been released by his kidnapper after Terry's father, a bank president, had delivered a large sum of money as directed by the kidnapper. After a jury trial, Ogle was convicted of kidnapping and assessed punishment of fifty years imprisonment.

Ogle's defense at trial was temporary insanity in that he was suffering from encephalitis at the time and was unable to conform his behavior to what he knew to be right or wrong.

Before trial, Ogle made a written motion for discovery of "reports in the nature of statements" and an oral motion requesting evidence that might lead to exculpatory or inculpatory evidence. Further, at trial, Ogle requested the written reports of F.B.I.

agents after each testified that he had reduced his investigative notes to a report. The judge conducted an *in camera* review of the individual reports, which had been compiled into one volume, and ruled that they were not discoverable on the ground that they contained nothing exculpatory.

On November 5, 1975, the Texas Court of Criminal Appeals reversed Ogle's conviction on the ground that the state *Gaskin* rule, *Gaskin v. State,* 172 Tex.Crim. 7, 353 S.W.2d 467, 469 (1961), mandated discovery of the F.B.I. reports. Upon rehearing, however, the Texas Court of Criminal Appeals set aside its prior decision and unanimously affirmed the conviction. *Ogle v. State,* 548 S.W.2d 360 (Tex.Cr.App.1976). Two judges who had not heard Ogle's oral argument on the original submission of the case on appeal participated in the decision on rehearing (no oral argument was granted on rehearing).

Ogle then filed for federal habeas corpus relief in the United States District Court for the Northern District of Texas. Ogle claimed that the prosecution's refusal to permit his inspection of the F.B.I. reports violated his due process right of discovery of exculpatory evidence as established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He further claimed that his right to the effective assistance of counsel under the sixth and fourteenth amendments to the United States Constitution was violated by the participation in the decision to affirm his conviction of two judges who did not hear his oral argument. The district court first dismissed the petition without prejudice for failure to exhaust state remedies. On appeal, this Court found that Ogle had sufficiently exhausted his state remedies, and reversed and remanded to the district court for a determination on the merits. *Ogle v. Estelle,* 592 F.2d 1264 (5th Cir. 1979). On

remand the district court then dismissed the case on the merits, adopting the findings and conclusions of the United States Magistrate that the matters Ogle raised failed to create a reasonable doubt as to guilt and that no constitutional violation had occurred on his appeal in state court. Ogle now appeals this decision. Since we agree with the district court on both claims, we affirm.

### I. The *Brady* Claim

■ We first address Ogle's contention that the suppression of the F.B.I. reports violated the *Brady* doctrine. The United States Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 45 (1963), that suppression by the prosecutor of evidence favorable to an accused when the accused has specifically requested the evidence violates due process "where the evidence is material either to guilt or to punishment." The holdings of this Court establish that a defendant seeking to establish a *Brady* violation must prove the following: (1) the prosecution's suppression of evidence; (2) the favorable character of the suppressed evidence for the defense; and (3) the materiality of the suppressed evidence. *Monroe v. Blackburn,* 607 F.2d 148, 150 (5th Cir. 1979), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980), quoting *United States v. Sink,* 586 F.2d 1041, 1051 (5th Cir. 1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979); *United States v. Anderson,* 574 F.2d 1347, 1353 (5th Cir. 1978).

Concerning the first requirement, *i. e.,* the prosecution's suppression of evidence, the prosecutor in the instant case did not give the F.B.I. reports to Ogle. He did, however, give them to the trial judge for an *in camera* inspection. Failure to supply the reports could raise possible constitutional due process issues.[1] We do not resolve this

---

1. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court defined the standard for "materiality" under *Brady.* The Court stated in *dictum* that, "if the subject matter of [a specific] request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to

require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." 427 U.S. at 106, 96 S.Ct. at 2398. This language implies that an *in camera* inspection of the suppressed evidence by the trial court might satisfy due process. But compare *Alderman v. United States,* 394

matter, however, since the decision in this case turns on the other requirements established under the *Brady* rule.

■ The second requirement of *Monroe, supra,* to establish a *Brady* violation is that the suppressed evidence must have been of a favorable character to the defendant. An analysis of the contents of the suppressed F.B.I. reports reveals that some of the information contained in the reports was of a favorable character to Ogle in that it provided a basis for impeaching some of the state's witnesses. F.B.I. Agent Meyer testified that Ogle was sane, but his report indicated that he knew of an examining physician's statement that Ogle was temporarily unable substantially to appreciate right from wrong at the time the crime was committed. The victim, Phillip Terry, testified that the lining around the eyes and mouth of the ski mask worn by his kidnapper had a different color than did the rest of the ski mask; yet the F.B.I. report stated that Terry could not recall any color around the eyes and mouth of the ski mask. In addition, Terry testified that the gun was a revolver, yet the F.B.I. report stated that Terry could not identify it as a revolver or an automatic. Further, Agent Alford testified that Terry led him to the hotel room used during the kidnapping, yet the F.B.I. report said that Terry "was later shown room number 256 of this motel." Finally, on six other occasions, certain state witnesses testified at trial about facts which were not mentioned in the F.B.I. reports. These latter occurrences, however, are not of great significance in terms of favorability to Ogle. In light of the above evidence, and since impeachment evidence falls within the *Brady* doctrine, *United States v. Gaston,* 608 F.2d 607, 613 (5th Cir. 1979), *United States v. Anderson, supra,* the second *Brady* element is present in this case.

■ We turn now to the third requirement under *Monroe, supra,* for establishing

a *Brady* violation. Under this requirement, there must be a showing that the suppressed or omitted evidence was material. The standard of materiality under *Brady* varies depending upon which one of four situations is involved in the case. In the first situation, the prosecutor has not disclosed information despite a specific defense request: the standard of materiality in this situation is whether "the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). In the second situation, the prosecutor has not disclosed information despite a general defense request for all exculpatory information or without any defense request at all: the standard of materiality is whether "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 107–12, 96 S.Ct. at 2399–01. The third situation involves the prosecutor's actual or constructive knowledge that the conviction is based on false evidence: the standard of materiality is whether there is "any reasonable likelihood that the false [evidence] could have affected the judgment of the jury." *Id.* at 103, 96 S.Ct. at 2397. Finally, in the fourth situation the prosecutor fails to disclose purely impeaching evidence not concerning a substantive issue, in the absence of a specific defense request: the materiality standard is whether the undisclosed evidence "probably would have resulted in an acquittal." *United States v. Anderson,* 1347 F.2d at 1354.

During trial, Ogle requested the written reports of the F.B.I. agents as each testified that he had reduced the notes of his investigation to memoranda which were made a part of the overall F.B.I. report on the case. In our view, these requests constituted requests for specific evidence under the *Brady* doctrine. Accordingly, the standard of materiality applicable in this case is whether the suppressed evidence "might have affected the outcome of the trial." *United*

U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), holding that an *in camera* inspection by the trial court of electronic surveillance records was insufficient to protect defendant's fourth amendment rights. The Court reasoned that

"the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court." 394 U.S. at 182, 89 S.Ct. at 971.

*States v. Agurs,* 427 U.S. at 104, 96 S.Ct. at 2398.[2] "Stated another way, the suppression of favorable evidence by the prosecutor, in the face of a specific request, cannot be excused unless 'there appears no reasonable likelihood that [the evidence] would have affected the judgment of the jury.'" *Monroe v. Blackburn,* 607 F.2d at 151, citing *White v. Maggio,* 556 F.2d 1352, 1357 (5th Cir. 1977).

In applying the above materiality standard, we must analyze the F.B.I. reports in light of the state's evidence presented at trial. The state's evidence overwhelmingly implicated Ogle. The state showed that, on February 20, 1973, the administrative office of Northwood Hills Elementary School in Richardson, Texas received a telephone call from a man purporting to be Kenneth Terry who requested that his "son," Phillip Ross Terry, be released from school to take some medical tests. Phillip Ross Terry, age twelve, was then picked up outside the school by an armed man wearing a ski mask and sunglasses and who was driving a green Capri automobile. Phillip Terry was blindfolded and taken to a room subsequently identified as a room at the Comanche Springs Motel. Kenneth Terry, the boy's father, then received a telephone call demanding that $200,000.00 be placed in a paper sack and left on an entrance ramp to the expressway in front of the bank. Kenneth Terry, the president of the First Bank and Trust in Richardson, collected $56,950.00 and left it in a paper sack as directed. A few minutes later a man in a green Capri automobile picked up the sack. Phillip Terry was then released near a different school from the one he attended.

The state introduced evidence that Ogle rented a green Capri automobile and rented a room at the Comanche Springs Motel that day. After Ogle was arrested, a search of his home revealed $56,370.00, some of the bills being identified as coming from the bank. Money wrappers, sunglasses, a ski mask, gloves, a key to a room at the motel, a .22 caliber pistol, and other items were also found at Ogle's home. Phillip Terry viewed the items of evidence recovered from Ogle's residence and identified the ski mask, the sunglasses, and the gloves as the same types worn by his abductor. Two days after the incident he identified Ogle's voice as the voice of the man who had taken him in his car.

The suppressed evidence did not directly contradict any of this evidence, but instead merely tended to impeach some of the

---

**2.** In so finding, we reject the standards of materiality for which Ogle and respondent respectively argue. Ogle, on the one hand, argues that the lowest materiality standard—the one applicable when the prosecutor knew or should have known that he used false evidence—should apply in this case. Ogle contends that his conviction was based on false evidence, as evidenced by the discrepancies, discussed above, between the testimony of certain state witnesses and the F.B.I. reports, and that the prosecutor knew or should have known of this fact.

Respondent, on the other hand, contends that the higher standard of materiality applicable when only a general request for the suppressed evidence was made should apply here. That standard would require a showing that the suppressed evidence creates a reasonable doubt that did not otherwise exist. Respondent claims that Ogle made only a general request for the F.B.I. reports. Respondent implicitly reasons that Ogle did not make a specific *Brady* request because Ogle cited only the Jencks Act and the Texas *Gaskin* discovery rule, but not *Brady,* in his request for the reports. The district court also held the view that Ogle made only a general request for the F.B.I. reports and, accordingly, applied the "reasonable doubt" standard of materiality. The district court believed that no specific request had been made because "[p]etitioner's first assertion of a *Brady* request was made after the Texas Court of Criminal Appeals had ordered the production of the entire F.B.I. Investigative Report...."

We disagree with the above contentions. Ogle's argument is without merit because impeachable evidence, as was involved here, is not necessarily false (perjured) evidence, and, in any event, Ogle's conviction was sufficiently supported by other evidence, as is discussed *infra.* Respondent's argument that no specific request was made also fails because of its erroneous assumption that a specific request for purposes of the *Brady* doctrine requires the mention of *Brady* itself. To the contrary, the specificity requirement of the *Brady* materiality standard applicable in this case goes to the evidence sought, not to the authority under which the evidence is sought.

state's witnesses on relatively minor points. It was not of the stature to have created a "reasonable likelihood" that it would have affected the jury's verdict. *Monroe v. Blackburn,* 607 F.2d at 151.

Similarly, the fact that the reports indicated Agent Meyer's knowledge of an examining physician's statement that Ogle was temporarily insane is significant, if at all, only for its impeachment effect. It has no significance on this appeal for Ogle's insanity defense since Ogle knew of the physician's statement but declined to introduce it himself. Furthermore, the indication in the reports that the agent knew of the physician's statement is not even significant for its possible impeachment effect, since Ogle could have simply *asked* Agent Meyer on cross-examination if Meyer was aware of the physician's statement. Ogle did not, however, even ask Meyer about the statement.

■ We conclude that it cannot be said that the suppressed F.B.I. reports "might have affected" the jury's verdict. Accordingly, that evidence was not "material" under *Brady* and, therefore, the prosecution's suppression of the F.B.I. reports did not constitute a due process violation under the *Brady* doctrine. This conclusion makes unnecessary the resolution of the issue of *in camera* inspection, *supra* at pp. 1124–1125, since materiality is not established.

## II. The Assistance of Counsel Claim

Ogle also contends that the participation in the final disposition of his state appeal by two judges who had not heard his oral argument denied him his right to the effective assistance of counsel under the sixth amendment of the United States Constitution as applied to the states through the fourteenth amendment. Ogle argues that this right was applicable in this setting because Texas law grants an individual the right to appeal a criminal conviction, Tex. Code Crim.Proc.Ann. art. 44.02 (Vernon

1979), and the right to argue the case orally when set for submission. Tex.Code Crim. Proc.Ann. art. 44.33, Rule 4 (Vernon 1979). Ogle also argues that the right to oral argument is analogous to the right to closing argument at trial, and that, since the denial of the latter is, under *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), a denial of the assistance of counsel under the sixth amendment, then so is a denial of the former.

We cannot find that Ogle has established a violation of a federal constitutional right under these facts. At the outset we note that the presence of a right to appeal and the right to argue a case orally under Texas law by no means establishes a federal constitutional right specifically to argue a case orally on appeal. Furthermore, since the United States Constitution does not require a state to provide appellate courts or a right to appellate review at all, *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), there is no constitutional right to appeal *per se.*[3] In addition, there is no authority establishing a specific constitutional right to oral argument on appeal. This Court often denies oral argument through the use of its summary calendar procedure under Circuit Rule 18. *See, e. g., United States ex rel. Charbonnet v. Heyd,* 432 F.2d 91 (5th Cir. 1970).

■ Ogle claims specifically a denial of his constitutional right to the effective assistance of counsel. Constitutionally ineffective assistance of counsel in a state court may be based upon either the due process clause of the fourteenth amendment standing alone, or the right to counsel clause of the sixth amendment as incorporated into fourteenth amendment due process. *Fitzgerald v. Estelle,* 505 F.2d 1334, 1335–37 (5th Cir. 1974) (en banc), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975); *Passmore v. Estelle,* 607 F.2d 662, 663 (5th Cir. 1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980).

---

3. We note that when a state does provide a right to appeal, it must meet the requirements of due process and equal protection. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9

L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956); *Rheuark v. Shaw,* 628 F.2d 297, 302 (5th Cir. 1980).

With respect to a general due process claim, constitutionally ineffective assistance of counsel, whether counsel is retained or appointed, occurs when the whole proceeding is fundamentally unfair. *Fitzgerald v. Estelle,* 505 F.2d at 1336. State action exists from the fact that the state conducts the proceedings. As to a specific sixth amendment claim, the constitutional requirement is reasonably effective assistance of counsel. *Herring v. Estelle,* 491 F.2d 125, 127–28 (5th Cir. 1974); *Fitzgerald v. Estelle,* 505 F.2d at 1336. Under the specific right to counsel claim, a constitutional violation occurs when retained counsel's conduct [4] is less than reasonably effective but not necessarily so grossly deficient as to render the proceedings fundamentally unfair. *Fitzgerald v. Estelle,* 505 F.2d at 1336–37. State action in retained counsel's conduct is shown by demonstrating that a state official who could have remedied the conduct so as to accord justice to the accused either knew or should have known of the conduct. *Id.* at 1337.

The alleged constitutional denial of effective assistance of counsel in the instant case is predicated upon the sixth amendment right to counsel as incorporated into fourteenth amendment due process, rather than upon the due process clause of the fourteenth amendment standing alone. Hence, the reasonably effective assistance standard of *Herring v. Estelle, supra,* governs. Applying this standard, we find that Ogle received reasonably effective assistance from his counsel on his state appeal, despite the participation in the final state appellate disposition of the case by two judges who had not heard the oral argument of Ogle's counsel. That two state appellate judges participated in the disposition of Ogle's state appeal without hearing oral argument did not lower the effectiveness of Ogle's counsel's representation below the constitutionally required minimum standard of reasonable effectiveness. Such an occurrence is not of the same constitutional stature as are cases decided by this Court involving denials of effective assistance of counsel on state appeals. *See, e. g., Byrd v. Smith,* 407 F.2d 363 (5th Cir. 1969) (appointed attorney of indigent defendant did not appeal conviction after defendant requested him to do so); *Passmore v. Estelle,* 594 F.2d 115 (5th Cir. 1979), *modified on other grounds,* 607 F.2d 662 (5th Cir. 1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980) (counsel submitted one-sentence brief on appeal in state court). There simply is no authority for a basic constitutional requirement that only those who hear an oral argument can participate in deciding the case argued. Accordingly, we reject Ogle's contention that the participation of two judges in the final disposition of his state appeal after the two judges had been absent at his oral argument violated his sixth amendment right to the effective assistance of counsel.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

4. Retained counsel are held to the same constitutional standard of representation as appointed counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).