**UNITED STATES of America, Plaintiff,**

v.

**Robert Lee JETT and Henry Q. Williams, Defendants.**

**Civ. A. No. 3:93–cv–460WS, Crim. No. 3:90–cr–68WS.**

United States District Court, S.D. Mississippi, Jackson Division.

April 7, 1994.

Robert Lee Jett, pro se.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

The petitioner Robert Lee Jett (hereinafter "Jett") submits this motion to vacate his sentence under Title 28 U.S.C. § 2255.[1] Jett was found guilty of distributing 1.98 ounces of cocaine base within 1,000 feet of a school in violation of Title 21 U.S.C. §§ 841(a)(1) and 845(a).[2] Jett also was found guilty of conspiracy to distribute cocaine under Title 21 U.S.C. § 846,[3] but this court set aside that verdict because Jett's co-felon was found innocent of that charge. On October 2, 1991, Jett was sentenced to serve 36 months in the custody of the U.S. Bureau of Prisons and, upon release from imprisonment, to remain on supervised release for a period of six years and participate in drug abuse aftercare. Jett was ordered to pay a $7,500.00 fine in installments of $115.00 per month.

Jett's conviction was affirmed by the United States Court of Appeals for the Fifth Circuit on April 23, 1992, 961 F.2d 1573. Jett claimed on appeal that his civil rights had been violated when the government's attorney had told the jury in closing argument that Jett's entrapment defense was inapplicable because the government had not used any "physical force" on Jett. Jett also asserted that the decision of the State of Mississippi to refer his case for federal pros-

Office of the U.S. Atty., Jackson, MS, for plaintiff.

1. Title 28 U.S.C. § 2255 provides in pertinent part:

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence.

 A motion for such relief may be made at any time.

2. Title 21 U.S.C. § 841(a)(1) provides in pertinent part that "[I]t shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

Title 21 U.S.C. § 845a(a) in effect at the time of Jett's criminal activity provided in pertinent part that, "[a]ny person who violates section 841(a)(1) of this title ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university ... is ... punishable by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title...."

3. Title 21 U.S.C. § 846 provides:

 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

ecution had violated his constitutional right to be free from cruel and unusual punishment because he had been exposed to harsher penalties in federal court.

The Fifth Circuit found that no attorney other than Jett's own counsel had used the term "physical force." The Fifth Circuit also found that Jett's Eighth Amendment argument had been specifically rejected by the Fifth Circuit in the case of *United States v. Carter,* 953 F.2d 1449 (5th Cir.1992).

## I. *JETT'S COMPLAINT*

In support of his instant motion for habeas corpus relief, Jett contends that the government: (1) denied him the right to confront witness Katherine Griffin; (2) relied upon an improper search warrant; (3) committed a *Brady* violation; (4) failed to overcome his entrapment defense; (5) introduced false evidence; and (6) subjected him to cruel and unusual punishment. Additionally, (7) he argues ineffective assistance of counsel.

## II. *PROCEDURAL BAR*

■ None of these issues was raised by Jett on direct appeal of his conviction. Hence, the government contends that these issues are subject to a procedural bar and that this court should not issue a writ because Jett has not shown cause and prejudice. *United States v. Shaid,* 937 F.2d 228, 231–32 n. 7 (5th Cir.1991); *United States v. Drobny,* 955 F.2d 990, 995 (5th Cir.1992). Furthermore, says the government, Jett cannot show a miscarriage of justice because Jett is unable to establish that he was innocent of the crime of which he was duly tried and convicted. *United States v. Flores,* 981 F.2d 231, 236 (5th Cir.1993).

In *United States v. Shaid,* the Fifth Circuit noted that the United States Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal, citing *United States v. Frady,* 456 U.S. 152, 164, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). "After conviction and exhaustion or waiver of any right to appeal," says the United States Supreme Court in *Frady,* "we are entitled to presume that [the defendant] stands fairly convicted." *Frady,* 456 U.S. at 164, 102 S.Ct. at 1592. Accord-

ingly, says the Court, a defendant can challenge his conviction after it is presumed final only on issues of constitutional magnitude, citing *Hill v. United States,* 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), and cannot raise an issue for the first time on collateral review without showing both cause for procedural default and actual prejudice resulting from the asserted error. *Frady,* 456 U.S. at 166, 102 S.Ct. at 1594.

This court agrees with the government that all the issues raised by Jett except his assertion of ineffective assistance of counsel are procedurally barred. Nevertheless, this court shall address each issue separately on its merits in order to enunciate the court's additional grounds for dismissing Jett's motion for habeas corpus relief.

## III. *RIGHT TO CONFRONTATION OF OPPOSING WITNESSES*

■ Jett says his right to confront the witnesses against him has been denied. Jett contends that the government did not call one Katherine (Kathy) Griffin as a witness, implying that the government had some duty to do so. According to Jett, Griffin was the "key witness" for the government, notwithstanding her absence from the courtroom during the entire trial. Of course, if Jett truly believed at the time of this trial that Griffin's testimony was so crucial to his defense, he could have and should have subpoenaed this witness himself.

The government says Griffin was a "confidential source" who could have been called to testify by Jett's attorney but for the attorney's strategic decision not to call her. According to the response of Jett's counsel to this motion for habeas corpus relief on the ground of ineffective assistance of counsel, Jett's counsel agrees that he could have called Griffin as a witness but did not do so because he feared her testimony would further incriminate Jett.

Jett complains additionally that the testimony of Detective Jerald Jones repeating remarks made to him by Griffin concerning Jett's disdain about police surveillance of his residence rendered his trial fundamentally unfair. Jett has included in his papers a

segment of the transcript of his trial. The transcript shows that Detective Jones said that he was told by Kathy Griffin that Jett once said that he was not worried about the Jackson police becoming involved in anything he was doing because he (Jett) knew them and they would do nothing about Jett. In the middle of this testimony, Jett's lawyer, attorney Tom Royals, objected on the ground of hearsay, and this court sustained the objection. Outside the presence of the jury, the government contended that it was not offering the statement for its truth. This court was not persuaded, however, and once again sustained the objection.

Jett argues that the government's only purpose in presenting this portion of Jones' testimony was to prove the truth of the matter asserted and to establish that Jett had the predisposition to commit the crimes with which he was charged. Jett acknowledges, however, that his attorney objected to this testimony and that this objection was sustained. Even so, Jett seeks to convince this court that no corrective instruction could overcome the prejudice.

The government argues that to establish as error the government's failure to call a witness, a defendant must prove that a witness's testimony would have been favorable and that the witness would have testified at trial. *United States v. Lewis,* 786 F.2d 1278 (5th Cir.1986); *Alexander v. McCotter,* 775 F.2d 595 (5th Cir.1985). The government also points out that the defendant must show that the witness's testimony would not have been cumulative. *Brogdon v. Blackburn,* 790 F.2d 1164 (5th Cir.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987).

Jett has shown nothing to persuade this court that Griffin's testimony would have been favorable to Jett's defense. Jett's attorney asserts that Griffin's testimony would more likely have been unfavorable, so, she was not called as a witness. Finally, while Jett contends that Griffin's purported testimony came into evidence through another witness, this contention is without merit inasmuch as this court sustained the objection of Jett's counsel to Detective Jones' testimony on the matter. Jett's presumption that no

corrective instruction could have overcome any alleged prejudice caused is self-serving and unsubstantiated. Hence, this court finds no basis for granting relief on Jett's claim that he was denied the right to confront Katherine Griffin.

## IV. *IMPROPER SEARCH WARRANT*

■ Jett says that the warrant for his arrest was issued by Judge William Barnett, Municipal Judge for the City of Jackson, Mississippi. According to Jett, Barnett was well-acquainted with Jett. Therefore, argues Jett, Barnett was not sufficiently detached from the matter to issue a warrant.

■ Of course, this court agrees that Judge Barnett should be sufficiently detached from the police, but there is no requirement that the judge issuing a warrant be unfamiliar with the person being arrested. Jett's argument on this point has no validity. This court agrees with the government that the test is whether the issuing officer is a "rubber stamp" for the police. It is well-established that the magistrate must not act as a rubber stamp, but instead must perform the function of a "neutral and detached" judicial officer. *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). Jett presents nothing to show that Barnett was not acting in a detached and neutral role; Jett only submits that Jett and Barnett were acquaintances. This alone is insufficient to undermine the validity of the warrant.

■ Jett also contends that the warrant was based on false information. According to Jett, Detective Jones and Kathy Griffin sat outside Jett's house and observed people coming and going. Jett says his girlfriend left the house with something wrapped in aluminum foil and that Kathy Griffin told Jones and another officer that the aluminum foil contained drugs. Jett says the aluminum foil contained nothing more than fried chicken.

■ The government responds that Jett must make a substantial showing of two things: (1) that a false statement was made knowingly and intentionally, or with reckless disregard for the truth; and (2) that the false

statement was necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *United States v. Damon*, 676 F.2d 1060, 1065 (5th Cir.1982). Jett has not shown that the statement presumably given to Detective Jones by Griffin was knowingly false, or even mistaken, and he has certainly shown no reason why Griffin may have wanted to deceive Detective Jones. Furthermore, probable cause does not require certainty, but only a probability that contraband or other evidence is located in a certain place. *United States v. Satterwhite*, 980 F.2d 317, 321 n. 5 (5th Cir.1992), citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2346, 76 L.Ed.2d 527 (1983). Jett offers only his version of the facts, a version which certainly is unsubstantiated and subject to dispute. Therefore, this court finds no basis for finding the search warrant to be invalid or otherwise improperly issued.

## V. *THE BRADY VIOLATION*

██ Jett says that his girlfriend, his co-workers, supervisors, and friends told investigators that Jett never used drugs and did not associate himself with persons who used drugs. Furthermore, according to Jett, the government interviewed many of these persons and withheld or otherwise did not disclose at trial the favorable information, if any, these persons may have given the government. Jett also says that a Dr. Smith was not called as a witness, who previously had allegedly tested Jett for drugs and obtained a negative result. Jett contends that what all these people had to say was "exculpatory" information which the government withheld and which Jett could have used to impeach certain witnesses.

 Jett argues correctly that the United States Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), applies to discovery after trial of information known to the prosecution but unknown to the defense. However, as the government argues to this court, the rule in *Brady* is a rule of fairness and minimal prosecutorial obligation, not a rule of discovery. Furthermore, says the government, it is the nature of the evidence

that governs the obligation, if any, to disclose. *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir.1978). According to the government, Jett never requested that the content of government interviews be disclosed. Citing *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2400, the government notes that the mere possibility that information might have helped the defendant is not enough to support a *Brady* violation claim. Furthermore, says the government, there is no showing that the content of these interviews, if admitted into evidence, would have created a reasonable doubt that did not otherwise exist. *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2402; *Monroe v. Blackburn*, 607 F.2d 148 (5th Cir. 1979), and *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir.1978).

Jett seems to be of the opinion that the government had a duty *sua sponte* to disclose to him any favorable information learned about him, no matter how significant to the specific charges at hand. However, the government was under no duty to report *sua sponte* to Jett all they learned about the case from these prospective witnesses. *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2400. The simple thing for Jett to have done if he truly believed this information would have been helpful to him was to request it. This Jett failed to do. Furthermore, Jett complains about matters known to him at trial. If Jett desired the testimony at trial, he could have called these witnesses himself. Therefore, inasmuch as Jett refers to no evidence, testimony or anything else that might have had an exculpatory effect at trial, this court finds no basis for issuing the writ on the ground of a *Brady* violation.

## VI. *THE ENTRAPMENT DEFENSE*

██ Jett claims to have been entrapped. Referring to the transcript of one taped phone call, Jett seeks to convince the court that he was exposed to extraordinary pressure from government operatives to commit the crime. Additionally, citing *United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir.1988), Jett argues that the evidence did not support

the verdict of the jury because the government did not prove Jett's bad character.

Jett says it was Kathy Griffin who suggested the criminal activity. Jett contends that he did not supply drugs for profit; that he demonstrated reluctance; and, according to Jett, that the government's inducement (sex) was unreasonable. Jett refers to the recent case of *Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). In this case, the Supreme Court upheld the entrapment defense, finding that Jacobson could not be said to have a predisposition to commit the crime of receiving child pornography in the mail when the government obtained Jacobson's name from an old mailing list and spent 26 months engaged in mailings and other communications in an attempt to exert substantial pressure on Jacobson to buy the pornography. The facts of *Jacobson* are not present in the case *sub judice.*

Notwithstanding his assertions that he was entrapped, Jett admits that the cocaine in question was removed from his pocket when he was arrested and that officers would not have known about the cocaine if Kathy Griffin had not told them where it was. Hence, it is obvious from Jett's admission that Jett told or otherwise let Kathy Griffin know that he had cocaine on his person and that he was avidly pursuing the criminal and sexual activity Kathy Griffin had suggested.

While Jett suggests that Griffin's inducement was repetitious and substantial, he produces but one transcript of one phone call where the entire matter was discussed. Jett also claims that he knew he was being watched by authorities. If this is so, then Jett would have known of any trap and would have had all the more reason to refrain from the activity suggested by Griffin.

■ The government responds that Jett must show (1) that the record contains evidence from which the jury could find that the governmental inducement made Jett act criminally when he otherwise would not have, and (2) that the record contains evidence from which the jury could find Jett's lack of intent before contact by governmental agents. *United States v. Henry* 749 F.2d 203, 207 (5th Cir.1984). It is not enough for

Jett to show that the government provided the circumstances in which the crime was committed. The government may use undercover agents to enforce the law. That officers and employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. *Jacobson v. United States,* —— U.S. at ——, 112 S.Ct. at 1540. Even artifice and stratagem may be employed to catch those engaged in criminal enterprises. *Id.,* citing *United States v. Russell,* 411 U.S. 423, 434–36, 93 S.Ct. 1637, 1644–45, 36 L.Ed.2d 366 (1973); *Sorrells v. United States,* 287 U.S. 435, 439, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).

What Jett really seems to be arguing is that the weight of the evidence did not support a jury verdict against him because, as Jett would have it, the government did not prove his predisposition to commit the crime. What Jett neglects to address here is the wealth of evidence the government produced against him at trial: the testimony of Alicia Yarbrough, the undercover agent for whom Jett was to acquire the cocaine; Jett's own words revealed at trial in a number of tape-recorded conversations between him and the undercover agent (Alicia Yarbrough) and cooperating party (Kathy Griffin); and Jett's own conduct, testified to by surveillance police officers who followed Jett from his home to a destination where Jett purchased the cocaine with marked funds supplied by the undercover agent.

■ Insufficiency of the evidence can support habeas relief only where the evidence, viewed in the light most favorable to the prosecution, is such that no rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Marler v. Blackburn,* 777 F.2d 1007 (5th Cir.1985). Jett's evidence and his argument are simply not sufficient to support an assertion that he was improperly induced into the act of obtaining illegal drugs for Kathy Griffin.

### VII. *FALSE EVIDENCE*

■ Jett says there was false evidence produced at trial. Firstly, Jett says that an

audio tape was improperly handled by the government; that the government knowingly inserted this tape into evidence; that this tape was marked 4–A; and that Jett's attorney "caught the tape," that is, his attorney objected to the tape, and it was removed from evidence. Hence, the jury did not consider the offending audio tape. Nevertheless, Jett says he was irrevocably prejudiced by the government's act of presenting this tape to the grand jury.

▮▮▮▮ This assertion is completely without merit inasmuch as a grand jury is free of the restraints of technical, procedural, and evidentiary rules that govern conduct of criminal trials. *United States v. Wilson*, 732 F.2d 404, 409–10 (5th Cir.), *reh. denied*, 736 F.2d 1526, *cert. denied*, 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984); citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). A grand jury may consider any evidence bearing on a defendant's guilt, regardless of whether that evidence would be excluded at trial. *Id.* at 410, citing *Calandra* (refusing to dismiss indictment based on evidence obtained in an unlawful search), and *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (refusing to dismiss indictment base on hearsay).

Jett's attorney responds that he, Jett and another attorney listened to the tapes in question many times without discerning any evidence of tampering. The government responds that Jett has presented nothing to show that any additional investigation of the tapes would have produced anything that would have led to a different result at trial. *United States v. Green*, 882 F.2d 999 (5th Cir.1989).

▮▮▮ Secondly, Jett argues that the government's witnesses contradicted each other as to the type of drugs found at Jett's apartment. One witness, says Jett, claimed to have found "coke rock" on the floor, while another witness said she was wrapping cocaine in foil when the police arrived. Jett sees these statements as significant contradictions. However, the jury could have concluded otherwise, that both witnesses were right and that there was consistency in what they said.

Inasmuch as Jett's claim of tampering involves a tape that was not admitted into evidence, and inasmuch as his claims of inconsistent evidence are based on nothing more than his personal, but debatable perspective of what is consistency, this court finds no basis for issuance of the writ on the issue of false evidence.

## VIII. *CRUEL AND UNUSUAL PUNISHMENT*

▮▮▮▮ Jett contends that the government's decision to accept his case for federal prosecution subjects him to cruel and unusual punishment. According to Jett, this decision exposed him to more severe punishment than what might have been imposed in state court. The ultimate decision of whether to charge a defendant rests with the federal prosecutor who has complete discretion in deciding whether to prosecute that charge. *United States v. Carter*, 953 F.2d 1449, 1462 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992). Moreover, a defendant may be prosecuted and convicted under a federal statute even after having been convicted in a state prosecution based on the same conduct. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir.1992), citing *United States v. Carter*, at 1462. Jett's assertion is without merit, and this court finds no justification for issuing the writ on this ground.

## IX. *INEFFECTIVE ASSISTANCE OF COUNSEL*

▮▮▮ Jett says he was denied an effective defense because his attorney failed to call favorable witnesses to attest to Jett's good character; failed to present a negative drug test conducted by a Dr. Smith to rebut the government's claim that Jett smoked crack cocaine; failed to compel the government to have Kathy Griffin at trial; failed to investigate the audio tapes; failed to make proper objections; failed to perfect a proper appeal; failed to attack the validity of the search warrant; failed to object to the imposition of a fine at sentencing; and failed to rebut the government's evidence.

■ Claims of ineffective counsel are reviewed under the two-prong standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Firstly, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2068. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. A petitioner must make both these showings in order to have habeas relief based on an ineffective counsel claim. *Id.*

■ In applying the first *Strickland* criterion, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Every effort must be made to eliminate the distorting effects of hindsight and judicial scrutiny of counsel's performance must be highly deferential. *Id.*

■ Furthermore, it is not sufficient that a habeas petitioner merely alleges a deficiency on the part of counsel. He must affirmatively plead the resulting prejudice in his habeas petition. *Hill v. Lockhart,* 474 U.S. at 60, 106 S.Ct. at 371; *Manning v. Warden, Louisiana State Penitentiary,* 786 F.2d 710, 712 (5th Cir.1986).

Jett's attorney, Tom Royals, pursuant to this court's directive, submitted a response to the defendant's claim of ineffective assistance of counsel. Royals says he did not call Kathy Griffin, the government's confidential source, to testify because he feared she would further incriminate Jett. Additionally, Royals says he wanted to use the "empty chair" ploy on closing argument. Royals says that all other decisions to call or not to call witnesses were part of his strategy. Dr. Smith's drug test was not used, says Royals, because the issue was whether Jett distributed cocaine, not whether he smoked marijuana or crack. Royals says Jett concurred in the decision not to call Dr. Smith, even though Dr. Smith was available to testify with pertinent documents at the trial.

Royals says he reviewed the matter of the search warrant and concluded that there was no valid search and seizure question. As for the audio tapes, Royals says that he, another attorney, and Jett listened to audio tapes many times and found no indication of tampering.

. Royals says he made all the objections he needed to make at trial. Royals notes that Jett has failed to indicate what additional objections Jett believes Royals should have made. Besides, says Royals, too many objections may alienate a jury, so, some are avoided for strategic reasons.

Any assertion, says Royals, that defense counsel failed to make a meaningful appeal is unfounded, especially when, according to Royals, he and Jett had several discussions about the appeal and which parts of the transcript they wanted. Moreover, says Royals, Jett made all decisions concerning the need for transcript because Jett was paying all costs.

To Jett's claim that Royals failed to object to the fine at sentencing, Royals says he had evidence which he decided not to present. According to Royals, this evidence raised more questions than it resolved.

■ Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Counsel's challenged conduct or decision must be viewed as of the time of said conduct or decision. *Strickland*

*v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. In this case, Jett says that his attorney should have investigated one of the audio tapes of Jett's conversations with Kathy Griffin. However, Jett admits that Royals examined and objected to the audio tape marked exhibit 4–A. This tape was not admitted in evidence.

 A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Nelson v. Hargett*, 989 F.2d 847 (5th Cir.1993), citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989). Jett contends only that he was prejudiced by the presentation of this tape before the grand jury. This court has already determined that this assertion is without merit. *United States v. Wilson*, 732 F.2d 404, 409–10 (5th Cir.), *reh. denied*, 736 F.2d 1526, *cert. denied*, 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984). Hence, Jett has shown neither what relevant evidence any investigation could have revealed nor what difference there could have been in the outcome of his trial as a result of this evidence.

Finally, Jett has concentrated much of his ineffective assistance argument on the testimony of Detective Jerald Jones. Jett devotes two pages of his brief to a trial colloquy between Jones and Tom Royals. In the colloquy, Royals is attempting to establish that Jones' surveillance of Jett's residence really did not produce much in the way of evidence to support probable cause. Jett says that in so doing, Royals engaged in "defective reasoning" by not objecting to the search warrant. Jett's reasoning is that Jones' investigation should have been more thorough than it was to justify issuance of a warrant. Jett refers next to Jones' statement that he was told by Kathy Griffin that Jett was not worried about police surveillance, the testimony to which Royals objected. This court sustained the objection to this testimony. Then, Jett says the audio tape conversation between himself and Kathy Griffin is being misinterpreted.

This court has previously addressed and rejected each of these contentions. The search warrant was based on the surveillance of Jett's residence, the observations by Detective Jones, the information provided by Kathy Griffin, and the tapes of Jett's telephone conversations with Griffin. Thus, the magistrate was presented more than just a "bare bones" affidavit. Instead, the magistrate had facts and circumstances from which he could determine whether there was probable cause. *United States v. Satterwhite*, 980 F.2d at 321. Determining probable cause does not require certainty, but only a probability that contraband or evidence is located in a certain place. *Id.*, citing *Illinois v. Gates*, 462 U.S. at 230, 103 S.Ct. at 2328.

Finally, relative to Jett's grievance over the hearsay testimony of Detective Jones regarding Jett's lack of concern with police surveillance, this testimony was not admitted in evidence. Since it was never admitted, it does not constitute error.

This court finds no basis for granting the relief requested on the ground of ineffective assistance of counsel. Jett has shown nothing to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action might be considered sound trial strategy.

## X. CONCLUSION

This court has addressed each one of petitioner's grounds for relief. None has merit. Therefore, the court hereby denies the petitioner's motion asking this court to vacate his sentence under 28 U.S.C. § 2255.

**SO ORDERED.**